IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TODD FORMAN,

                    Plaintiff,

  v.

CITY OF MIDDLETON and GURDIP BRAR,

                    Defendant.

OPINION and ORDER

20-cv-516-jdp

---

      Plaintiff Todd Forman was the IT director for the city of Middleton when the city fired him in 2020. Three years earlier, he had been diagnosed with severe depression. Forman contends that the city failed to provide reasonable accommodations for his depression, retaliated against him for reporting his depression, and created a hostile work environment, all in violation of the Americans with Disabilities Act (ADA). He also contends that the city's conduct violated the Wisconsin Fair Employment Act. He brings suit against the city and its mayor, Gurdip Brar.

      The city moves for summary judgment; Forman moves for partial summary judgment. There's no dispute that Forman suffered from depression, and Forman's supervisors knew it. But Forman did not actually request any accommodations for his depression, and the city had ample and genuine reasons to terminate him for poor performance. The court will grant the city's motion and deny Forman's. The parties do not address the city's property-damage counterclaim against Forman. Because all the federal claims have been resolved, the court will decline to exercise supplemental jurisdiction over the property-damage claim. The case will be dismissed.

UNDISPUTED FACTS

The court must begin with discussion of the summary judgment evidence. Neither of the parties followed the court's summary judgment procedures, although the city is the primary offender. The city didn't respond to Forman's proposed findings of fact at all. *See* Summary Judgment Procedure II.A.2 (the response to a motion for summary judgment must include "a response to the moving party's proposed findings of fact"). The city also failed to support the majority of its own proposed findings of fact with citations to the evidence. *Id.*, I.B.2. ("[e]ach factual proposition must be followed by a reference to evidence supporting the proposed fact"). The court will deem Forman's proposed findings of fact to be undisputed unless they are directly contradicted by a proposed finding of fact from the city that is supported with a citation to evidence. The court will not consider the city's unsupported proposed findings of fact.

Both parties also discuss many facts in their briefs that are not included in their proposed findings of fact. *Id.*, I.B.3 ("[t]he statement of proposed findings of fact shall include ALL factual propositions the moving party considers necessary for judgment in the party's favor"). However, to understand the context of this case and to bring it to an efficient resolution based on the evidence, the court has considered those facts that both sides discuss, that are clearly undisputed, and that are supported by the evidence of record.

With that explanation, the following facts are undisputed.

Todd Forman began working for the city of Middleton's IT department in 1996. He first worked as an engineering technician and became the IT director in 2005. Michael Davis, the city's personnel officer, was Forman's direct supervisor.

2

Forman was diagnosed with recurring major depressive disorder in 2017. His depression stemmed from work stress, marital problems, and his sister's terminal illness. The city's human resources manager, Melissa Bohse, noticed that Forman's work performance began to decline that year.

In mid-2018, the city decided to move the IT department from City Hall to the police department building. The police department was the unit of city government that made the greatest use of the city's IT services. Forman opposed the move because there had been tension between the two departments since 2012. At a meeting in April with Bohse and Davis, Forman said that the move posed an "ADA issue" because the people on his team had "mental illness." Dkt. 15 (Forman Dep. 30:19–20). Davis responded, "that's bullshit." *Id*. Forman also approached Bohse in June to ask if the city would reconsider the move. He said that he felt "harassed" by the decision. Dkt. 13 (Bohse Dep. 77:8–10). Bohse told Forman that the decision was final.

Around the time of the IT department move, Forman took a leave of absence under the Family Medical Leave Act (FMLA), from July 30 through October 1, 2018. He disclosed his recurring major depressive disorder diagnosis on his FMLA leave application and identified his depression as his reason for taking leave.

When Forman returned to work, Davis placed him on a performance improvement plan with goals for completing several IT projects. Forman was required to meet regularly with police chief Charles Foulke to discuss progress under the plan. Forman alleges that during a meeting in November, he told Foulke that he had not completed a WiFi project because he had been on FMLA leave. He says that Foulke responded, "you're not holding me hostage to your FMLA. That's not an excuse. It's unacceptable." Dkt. 15 (Forman Dep. 113:15–17). After the meeting,

3

Forman emailed Davis, the mayor, and an alderperson, saying that Foulke had "verbally chastis[ed]" and "abused" Forman and that comments like Fouke's contributed to Forman's depression. Dkt. 12-5. Davis later emailed the mayor and said that he didn't view Foulke's comments as abusive. Dkt 19-2.

In January 2019, Foulke requested an audit of the IT department in an email to Davis. In the email, Foulke described his frustrations with VPN and WiFi access, said that Forman took FMLA leave to avoid an audit that had been previously planned, and said that an audit would reveal problems with how Forman managed the IT department. Dkt. 12-6. Davis agreed to conduct the audit. *Id.*

At a meeting in May 2019, Forman discussed his depression and work stress with Davis. Forman recorded the conversation without Davis's knowledge. Dkt. 14 (Davis Dep. 150:14). Davis said that he could see that Forman was depressed and suggested that Forman start running or use his employee assistance program. *Id.*

About two months later, Forman took a second FMLA leave of less than two weeks. Forman admitted himself to a hospital because he was having suicidal thoughts. After he returned to work, the city hired a consulting firm, Baker Tilly, to conduct the audit of the IT department that Foulke had requested. The audit was completed in December 2019. Dkt. 12-7. Based on an assessment of the IT department's organizational structure and IT systems, the audit identified 11 high to moderate risks and proposed recommendations for addressing them. The city asserts that the audit results confirmed officials' concerns that Forman was mismanaging the IT department and prompted the city to terminate Forman, but Forman disputes that the audit results reflected poor performance. Forman was terminated on January 6, 2020. The court will introduce additional facts in the analysis below.

ANALYSIS

Forman brings three claims under the ADA: (1) the city failed to reasonably accommodate his disability; (2) the city retaliated against him for disclosing his disability and seeking accommodations; and (3) the city subjected him to a hostile work environment. He also brings one claim under the Wisconsin Fair Employment Act, contending that the city fired him for pretextual reasons.

Forman moves for summary judgment on his failure-to-accommodate claim. Dkt. 9. The city moves for judgment on the pleadings or, in the alternative, for summary judgment on all of Forman's claims. Dkt. 16. The city cites evidence to support its arguments throughout its briefs, so the court will treat the city's motion as one for summary judgment. Summary judgment is appropriate if the moving party shows that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the court evaluates each motion separately, construing the facts and drawing all reasonable inferences from those facts in favor of the nonmovant. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008).

The ADA creates a cause of action against employing agencies, not against individual employees. *Jaros v. Ill. Dep't of Corrs.,* 684 F.3d 667, 670 (7th Cir. 2012). So mayor Brar is not a proper defendant in this lawsuit and the ADA claims against him will be dismissed.

Forman's core contention is that the city discriminated against him because he disclosed his depression and needed accommodations. Forman says that the city refused to discuss accommodations with him, and that Davis, Foulke, and Bohse retaliated and harassed him based on his depression. The city says that Forman was terminated for poor performance, which was reflected in performance reviews as far back as 2012, and by the 2019 audit of the IT

5

department. For the reasons explained below, Forman has not adduced evidence that would support a reasonable jury verdict on any of his claims.

**A. Failure to accommodate**

Forman contends that the city failed to give him reasonable accommodations after he reported that he suffered from depression. Both parties move for summary judgment on this claim. The ADA prohibits an employer from "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." 42 U.S.C. § 12112(b)(5)(A). To prevail on a failure-to-accommodate claim, Forman must show that: (1) he is a qualified individual with a disability; (2) the city was aware of his disability; and (3) the city failed to provide a reasonable accommodation. *Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 682 (7th Cir. 2014).

The parties dedicate much of their briefs to discussing whether Forman was a qualified individual with a disability. Specifically, they dispute whether Forman requires an expert to establish his disability and whether his depression was severe enough to be disabling. For purposes of this opinion, the court will assume that Forman was disabled. But Forman fails on the third element, the failure to provide a reasonable accommodation, because Forman did not request accommodations.

When an employee asks for an accommodation because of a disability, the employer is required to engage in an "interactive process" to determine the severity of the disability and the appropriate accommodations under the circumstances. *Kauffman v. Petersen Health Care VII, LLC,* 769 F.3d 958, 963 (7th Cir. 2014). It is the employee's duty to trigger that process by

notifying the employer that he has a disability and desires an accommodation. *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 803 (7th Cir. 2005).

Forman contends that the city should have engaged in the interactive process with him at three points: (1) when he took FMLA leave; (2) when he told the city about his depression diagnosis; and (3) when he told Davis that he was depressed at a meeting in May 2019. But Forman doesn't adduce evidence that he notified the city that he was disabled and needed accommodations. A request for FMLA leave doesn't necessarily trigger an employer's duty to engage in the interactive process. *See Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 496 (7th Cir. 2014). This is because an FMLA request indicates that an employee is unable to perform his job for a period of time, not that he will be able to perform his job with modifications when he returns. *See Capps v. Mondelez Glob. LLC*, 147 F. Supp. 3d 327, 340 (E.D. Pa. 2015), aff'd, 847 F.3d 144 (3d Cir. 2017). When Forman reported his depression diagnosis to the city in July 2018 and told Davis that he was depressed in May 2019, Forman didn't ask for accommodations in either situation. Forman's FLMA request form, which was completed by his doctor, noted that Forman was unable to perform certain job functions and manage his current symptoms well enough to maintain effective performance, but it didn't suggest that he would need accommodations when he returned to work or that any accommodations would help his depression. Dkt. 12-3.

Forman contends that an employer has a heightened duty to initiate the interactive process when an employee has a mental health disability, citing *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1285 (7th Cir. 1996), and *Walters v. Mayo Clinic Health Sys.-EAU Claire Hosp., Inc.*, 998 F. Supp. 2d 750, 764 (W.D. Wis. 2014). But that rule only applies when an employee with a mental health issue has difficulty communicating with his employer about his

7

situation. *Id. Bultmeyer,* for example, concluded that an employer failed to accommodate a disabled employee who didn't request accommodations because the employee's severe bipolar disorder, anxiety attacks, and schizophrenia gave him irrational fears, which clouded his ability to ask for help. 100 F.3d at 1285–86. The court explained that when an employee has a mental illness, "the employer has to meet the employee half-way, and if it appears that the employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help." *Id.* at 1285.

Forman adduces no evidence that his depression made him unable to communicate his needs or that he didn't know how to ask for accommodations. To the contrary, Forman advocated aggressively for himself multiple times, including by opposing the IT department move at a meeting, asking Bohse if the city could reconsider the decision to move the IT department, telling Davis that he was depressed during a meeting, and emailing city leadership to complain about Foulke's comments to him during the November 2018 meeting. Forman hasn't established that the city was required to begin the interactive process or accommodate him. The court will grant the city's motion for summary judgment and deny Forman's on the failure-to-accommodate claim.[1]

## B. ADA Retaliation

The ADA prohibits employers from retaliating against employees who assert their rights under the statute. 42 U.S.C. § 12203(a). To prevail on an ADA retaliation claim, Forman must show that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse action;

---

[1] Forman suggests numerous accommodations that would have helped. Dkt. 10, at 22–23. But given the court's determination that Forman did not request accommodations, the court need not consider whether the proposed accommodations would have been reasonable or effective.

8

and (3) there is a causal connection between the two. *Dickerson v. Bd. of Trustees of Comm. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). The causation element requires Forman to show but-for causation, meaning that he would have kept his job if he hadn't exercised his rights under the ADA. *Rowlands v. United Parcel Serv.*, 901 F.3d 792, 801 (7th Cir. 2018). Forman contends that the city fired him for reporting his disability and requesting accommodations, and he contends that the reasons that the city gave for firing him—his poor performance and the audit results—were pretextual.

The city doesn't dispute that Forman engaged in statutorily protected activity or that his termination was an adverse action. The parties dispute whether Forman's claim is timely, but I'll assume that it was and focus on the causation element.

Forman notified the city of his diagnosis when he applied for FMLA leave in July 2018, and he was terminated in January 2020. There was more than a year and half between the two events, so the timing alone doesn't suggest a causal relationship.

Forman's own evidence shows that the city had valid reasons for terminating him. The December 2019 audit results identified numerous problems with the IT department's environment, organizational structure, and technology systems. Dkt. 12-7. For example, the audit stated that the IT department lacked formalized policies and procedures, had poor software management, poor internet connectivity, poor data protection, outdated phone and operating systems, no timelines for progress on network issues, and slow resolution of service requests. *Id*. The audit also found that the IT department had unclear roles and responsibilities, poor communication and oversight, and difficult relationships with other departments. *Id*. The audit stated that the IT director should be responsible for project planning, budgeting, and team oversight, but that all of those functions were lacking, and that IT services were suffering

because Forman was focusing his time on network infrastructure rather than director-level responsibilities. *Id.*

Forman also submitted depositions of Davis and Bohse, who both noted problems with Forman's performance that corroborate the audit results. Davis testified in his deposition that Forman struggled with collaboration and teamwork, had poor communication skills, was difficult to manage, had friction with several departments, and that over time, the city's technology needs outgrew Forman's abilities. Dkt. 14 (Davis Dep. 20:17–23:7). Davis also testified that Forman received bad performance evaluations as early as 2012. *Id.* (Davis Dep. 26:21–30:8). Bohse testified in her deposition that she noticed a decline in Forman's performance in 2017.

Forman doesn't dispute these specific criticisms of his work, and he concedes that his performance started to decline in 2017. The concession is nearly fatal to his retaliation claim. The question is not whether the employer's given reasons for dismissal were accurate or fair, but whether the reasons were pretextual, meaning they were "a lie, specifically a phony reason for some action." *McCann v. Badger Mining Corp.*, 965 F.3d 578, 589 (7th Cir. 2020) (quotations omitted).

Nevertheless, Forman argues that the audit was pretext for two reasons. First, he points out that it was Foulke who ordered the audit. He adduces an email that Foulke sent to Davis in January 2019, stating, "we need an audit. Why do you think Todd was gone for 12 weeks? It was because he feared the results of an audit, which seemed imminent when he left. The audit will show that he is incompetent, that our IT systems are a mess and that he and his subordinates are not qualified." Dkt. 12-7, at 2. Foulke's email also describes frustrations with Forman's management of the IT department and IT projects. *Id*. The tone of Foulke's email

may have been blunt to the point of being unprofessional, but Forman adduces no evidence that Foulke fabricated his criticisms to hide a discriminatory motive, which is what matters. *See Monroe v. Indiana Dept. of Transportation*, 871 F.3d 495, 505 (7th Cir. 2017). Foulke was plainly irritated by Forman's taking FMLA leave, but the email does not demonstrate general animus against individuals with depression.

Second, Forman contends that the audit showed that he was overworked, not underperforming. He points to the audit recommendation that the city hire a new network administrator or outside service provider to allow Forman to focus on director-level responsibilities. He also cites Davis's testimony that the city followed that recommendation and hired a network management company after Forman was fired. *See* Dkt. 14 (Davis Dep. 171:4–19). But isn't enough for Forman to disagree with the city's interpretation of the audit or the actions it took based on the audit results. Federal courts "do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions." *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 532 (7th Cir. 2003). The audit report provided sharp criticism of the management of the IT department. Forman cites no evidence that he was overworked because he was disabled. And, most important, he adduces no evidence that the audit was a sham or that the results were falsified.

No reasonable jury could find that the city used the audit as a pretext to cover up a retaliatory firing. The court will grant summary judgment on Forman's retaliation claim.

## C. Hostile work environment

Forman contends that city officials harassed him about his disability so severely that it created a hostile work environment. To prevail on a hostile work environment claim, Forman must show that: (1) he was subject to unwelcome harassment; (2) the harassment was based

11

on his disability; (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Ford v. Marion Cty. Sheriff's Off.*, 942 F.3d 839, 856 (7th Cir. 2019). In assessing a hostile work environment claim, courts examine the frequency and severity of the alleged discriminatory conduct, whether it is physically threatening, humiliating, or a mere offensive remark, and whether it unreasonably interferes with the employee's performance. *Demkovich v. St. Andrew the Apostle Par., Calumet City*, 3 F.4th 968, 977 (7th Cir. 2021)

I understand Forman to contend that he was subjected to a pattern of hostile conduct based on six events: (1) the IT department move; (2) Davis's comment of "that's bullshit" when Forman opposed the IT department move at the April 2018 meeting; (3) Foulke's statement, "you're not holding me hostage to your FMLA. That's not an excuse. It's unacceptable," when Forman explained that he hadn't completed a WiFi project because of his FMLA leave at the November 2018 meeting; (4) Davis's email to the mayor that Davis didn't think Foulke's comments at that meeting were abusive; (5) Davis's suggestion that Forman run more when Forman told Davis that he was depressed in May 2019; and (6) Davis's instructions to Forman that he should "make it work" when Forman complained about Foulke's conduct. *See* Dkt. 24, at 26 and Dkt. 1, at 11–12.

Forman falls short of showing that these instances created an environment permeated with "discriminatory intimidation, ridicule, and insult" severe enough to create an abusive working environment. *Ford*, 942 F.3d at 851. Most of these events cannot be construed as hostile. Two of them, the IT department's move and Davis's "bullshit" comment, occurred before Forman disclosed his depression to the city, so they could not have constituted harassment based on Forman's depression. Davis's email to the mayor defending Foulke wasn't

sent to Forman, and comments not directed at an employee are less indicative of harassment than direct comments. *See Tarpley v. City Colleges of Chicago*, 752 F. App'x 336, 348 (7th Cir. 2018) (citing *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 271 (7th Cir. 2004). It is not apparent that Davis's suggestion that Forman run was intended to be harmful rather than helpful. And Davis's instructions to "make it work" with Foulke were reasonable in light of the conflict between the IT and police departments.

This leaves Foulke's comment at the November 2018 meeting. A reasonable jury could find that it was hostile toward Forman's depression. But a single off-hand comment or isolated incident, unless it is extremely serious, isn't enough to constitute hostile workplace harassment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). In *Ford*, for example, an employer's comment that insinuated that an employee faked her disability to avoid work, among several less serious comments, was insufficient to establish a hostile workplace. 942 F.3d at 857; *see also Casper v. Gunite Corp.*, 221 F.3d 1338 (7th Cir. 2000) (rudeness, impatience, and personality conflicts do not constitute an ADA violation). At most, Forman has shown that he had a poor relationship with Foulke and that this made Forman's work environment unpleasant. But no reasonable jury could find that the city officials' conduct was so pervasive and severe that it created an abusive environment on the basis of Forman's depression. The court will grant summary judgment on Forman's retaliation claim.

**D. Wisconsin Fair Employment Act claim**

Forman contends in his complaint that the city violated the Wisconsin Fair Employment Act, which prohibits employers from discriminating against an individual because he is disabled. Wis. Stat. § 111.31. But that statute doesn't give a plaintiff a general private right of action, unless he brings a claim for discrimination that occurred between July 1, 2009,

and April 19, 2012. *Sharp v. Stoughton Trailers, LLC*, No. 15-cv-598, 2016 WL 3102241, at *3 (W.D. Wis. June 2, 2016). Because Forman's claims arise out of events that began in 2017, he cannot obtain relief in federal court under the statute.

### E. The city's counterclaim

The city raises a counterclaim in its answer to Forman's complaint, alleging that Forman damaged city property in excess of $1,000 by installing water taps to create a personal aquarium in his office. Neither party addresses the counterclaim in its summary judgment materials or in the discovery materials filed with the court, so the counterclaim hasn't been litigated. The only basis for the court's jurisdiction over the counterclaim is supplemental jurisdiction under 28 U.S.C. § 1367. The general rule is that a district court should relinquish supplemental jurisdiction over state-law claims when the federal claims are dismissed before trial. *Williams v. Rodriguez,* 509 F.3d 392, 404 (7th Cir. 2007). The court will dismiss the city's state-law claim without prejudice to the city's refiling it in state court.

ORDER

IT IS ORDERED that:

1. Plaintiff Todd Forman's motion for summary judgment, Dkt. 9, is DENIED.
2. Defendants' motion for summary judgment, Dkt. 16, is GRANTED.

3. The city's state-law counterclaim is DISMISSED without prejudice.

4. The clerk of court is directed to close the case.

Entered October 29, 2021.

                                      BY THE COURT:

                                      /s/

                                      _____
                                      JAMES D. PETERSON
                                      District Judge